**SCHIFF HARDIN LLP**
RENEE C. KELLEY (WSB # 47643)
rkelley@schiffhardin.com
STEPHEN M. COPENHAVER (WSB # 47631)
scopenhaver@schiffhardin.com
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA 94105
Telephone:    (415) 901-8700
Facsimile:    (415) 901-8701
Attorneys for Defendant Owens-Illinois, Inc.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| DONALD M. SKAGGS and CHARLOTTE M. SKAGGS, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>BORGWARNER MORSE TEC INC., et al.,<br><br>Defendant. | Case No. 2:14-cv-01506-JLR<br><br>**DEFENDANT OWENS-ILLINOIS, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND [ECF. NO. 7]**<br><br>**ORAL ARGUMENT REQUESTED** |

Owens-Illinois, Inc. ("OI") respectfully submits this brief in further opposition to Plaintiffs' Motion to Remand (ECF No. 7), pursuant to this Court's October 16, 2014 Order (ECF No. 52). In further opposition to Plaintiffs' Motion, OI states as follows:

**INTRODUCTION**

Plaintiffs allege that Donald Skaggs was exposed to asbestos – including from OI's Kaylo product – while serving in the U.S. Navy between 1951 and 1954. To the extent that allegation is true, the exposure was the result of decisions made by Navy personnel, who were federal officers, to specify design and performance characteristics that could only be satisfied at that time by using asbestos as a raw material. Satisfaction of those specifications renders OI a government contractor entitled to a federal forum for this lawsuit.

Plaintiffs filed this case in King County Superior Court on August 28, 2014. OI was served on September 5, 2014. Defendant Crane Co. ("Crane") removed, asserting federal officer jurisdiction under 28 U.S.C. §§ 1442(a)(1) and 1446 on September 30, 2014. Although Plaintiffs

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 1 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

filed a motion to remand on October 1, 2014 based on the dismissal of the removing defendant Crane, Plaintiffs did not serve that motion on OI. On October 1, 2014, defendant CBS Corp. filed a joinder to Crane's notice of removal. OI filed its answer on October 7, 2014, asserting a government contractor defense: "Any product at issue allegedly manufactured or sold by OI for a military or other governmental use was done so in compliance with mandatory government contract specifications." (ECF No. 28 at 3) On October 9, 2014, Plaintiffs' counsel informed OI of the motion to remand, and OI subsequently filed its opposition to remand that same day.

Plaintiffs' motion to remand argues only that this case should be remanded because Plaintiffs dismissed the originally removing defendant, Crane. Plaintiffs do not address CBS's joinder, nor the existence of federal jurisdiction over Plaintiffs' claims against OI by virtue of OI's federal government contractor defense. Plaintiffs' motion to remand should be denied, because this Court has federal officer jurisdiction over the claims against OI.

### I.  OI IS ENTITLED TO HAVE THE MERITS OF ITS GOVERNMENT CONTRACTOR DEFENSE DECIDED IN A FEDERAL FORUM.

Defendants like OI have "much broader" rights to a federal forum in the context of federal officer removal than they do under the general removal statute. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)(*citing Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)). This policy favoring a federal forum in these circumstances "should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Durham*, 445 F.3d at 1252 (*citing Arizona v. Manypenny*, 451 U.S. 232, 242 (1981)). Courts should therefore take a "clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal form, [courts] are to interpret section § 1442 broadly in favor of removal." The policy rationale underlying the broad interpretation of § 1442 is clear: "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham*, 445 F.3d at 1253.

### II.  PLAINTIFFS DO NOT CONTEST THE PROPRIETY OF CRANE'S REMOVAL PURSUANT TO FEDERAL OFFICER JURISDICTION, AND THE COURT'S OBLIGATION TO EXERCISE JURSIDICTION CONTINUES.

Plaintiffs' motion to remand does not challenge the existence of federal jurisdiction at the

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF
IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 2 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST.
TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

1   time Crane filed its notice of removal. Nor do Plaintiffs argue that Crane's removal of this case
2   was improper, or that the evidence submitted by Crane in support of its removal petition was
3   insufficient to support a colorable government contractor defense. Rather, Plaintiffs argue that
4   because Crane was the "sole removing defendant," and they have dismissed Crane, the case
5   should be remanded to state court. But as this court recognized in its October 16 Order, the
6   situation is not so simple: CBS is still a defendant in the case, and OI intends to pursue a
7   government contractor defense as well. This case had already been timely removed to federal
8   court by Crane before the time for OI to remove had expired, and, as Plaintiffs concede, the other
9   defendants were not required to join in Crane's notice of removal for this Court to properly
10  exercise its jurisdiction over all parties. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*,
11  644 F.2d 1310, 1315 (9th Cir. 1981); *see also* ECF No. 42 at ¶ 3.

12   Like Crane, OI also meets all the criteria for removal pursuant to federal officer
13  jurisdiction under § 1442(a). First, it is undisputed that corporations such as OI are properly
14  considered "persons" for purposes of federal officer removal jurisdiction. *See* 1 U.S.C. § 1 ("the
15  word[] person . . . includes corporations"); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d
16  387, 398 (5th Cir. 1998) ("We have previously held that corporate entities qualify as 'persons'
17  under § 1442(a)(1).").

18   Second, OI "acted under" federal officers because, as explained herein, its development
19  and sale of Kaylo to the Navy assisted the Navy in its construction of naval warships and was
20  done pursuant to precise specifications involving direction and guidance from the Navy. *Ruppel v.*
21  *CBS Corp.*, 701 F.3d 1176, 1181 (7th Cir. 20102) (defendant in asbestos suit was "acting under"
22  federal officer because it assisted the government by providing equipment in building warships;
23  "'Acting under' covers situations, like this one, where the federal government uses a private
24  corporation to achieve an end it would have otherwise used to own agents to complete."); *see also*
25  *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992) (affirming summary
26  judgment on design defect claim under government contractor defense).

27   Third, a causal nexus exists between Plaintiffs' claims and OI's conduct, because OI's
28  manufacture and sale of Kaylo pursuant to the control and direction of the Navy's specifications

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF
IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 3 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST.
TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

1  forms the basis of Plaintiffs' claims against OI. *Leite*, 749 F.3d at 1249; *Jefferson Co. v. Acker*,
2  527 U.S. 423, 432 (1999) ("[T]he question [of] whether the challenged act was outside the scope
3  of [the defendant]'s official duties, or whether it was specifically directed by the federal
4  Government, is one for the federal—not state—courts to answer.").

5        Finally, as explained in detail herein, OI asserts at least a colorable government contractor
6  defense pursuant to *Boyle* insofar as: (1) the government promulgated reasonably precise
7  specifications for the design of thermal insulation products like Kaylo; (2) Kaylo conformed to
8  those specifications; and (3) the United States had at least equal knowledge to OI about the
9  potential hazards associated with asbestos. *Boyle v. United Tech. Corp.*, 487 U.S. 400 (1988).

10       Plaintiffs argue that the court "must" now remand because it has no basis to exercise
11 jurisdiction following the dismissal of Crane, citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*,
12 383 U.S. 283, 295 (1938) (after dismissal of diverse defendant, "the remaining parties, who were
13 involuntarily taken into the federal court, should upon cessation of the separable controversy . . .
14 have their case returned to the state court."). But OI is not a defendant "involuntarily" taken into
15 federal court against whom Plaintiffs' claims form a separable controversy having nothing to do
16 with a federal forum. Nor is this like the "separable controversy" presented by the dismissal of a
17 federal officer in *Murphy v. Kodz*, where the Ninth Circuit held the court had discretion to remand
18 a case if the "federal removal predicate" was dropped from the proceedings and the "federal head
19 of jurisdiction ha[d] vanished." 351 F.2d 163, 167 (9th Cir. 1965).

20       Here, although the original removing federal officer has been dismissed, federal officer
21 jurisdiction is still very much in play: at least two remaining federal officer defendants have
22 alleged immunity from state tort law claims under *Boyle*. Plaintiffs' dismissal of the original
23 removing federal officer does not render the dispute between Plaintiffs and OI into a "separable
24 controversy" the Court could remand in its discretion. Rather, federal officer jurisdiction, "which
25 is designed to protect federal employees against local prejudice, is mandatory, not discretionary,
26 and a district court has no authority to abstain from the exercise of that jurisdiction. . . ." *Jamison*
27 *v. Wiley,* 14 F.3d 222, 239 (4th Cir. 1994); *Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1453
28 (4th Cir. 1996)(jurisdiction properly acquired by federal officer removal "was effectively

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF
IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 4 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST.
TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

mandatory and did not permit a discretionary remand following denial of the federal immunity defense."); *cf. Mellis v. Asbestos Corp.,* 2013 WL 4805746 (N.D. Cal. Sept. 9, 2014)(rejecting claim that court no longer had subject matter jurisdiction after dismissal of removing federal officer, but exercising discretion to grant unopposed motion to remand).

### III. FEDERAL JURISDICTION REMAINS PROPER AS OI ASSERTS A COLORABLE GOVERNMENT CONTRACTOR DEFENSE.

As the U.S. Supreme Court explained in *Willingham v. Morgan*, federal jurisdiction pursuant to federal officer removal only requires a federal officer defendant to "raise a colorable [federal] defense." 395 U.S. 402, 406-07; *Leite*, 749 F.3d at 1124 (same). Once a defendant raises such a defense, federal jurisdiction is conferred; the officer "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493 (1983) (a civil action arises under federal law for constitutional purposes if it "necessarily raises questions of substantive federal law"); *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)("arising under" jurisdiction satisfied so long as federal issue is not "wholly insubstantial").

The requirement of a merely colorable federal defense serves the federal officer removal statute's purpose. Indeed, "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham*, 395 U.S. at 407. Therefore, once a defendant has made a colorable showing of a federal defense, federal jurisdiction is warranted. *Leite*, 749 F.3d at 1124 (affirming denial of motion to remand; holding "[a]t this stage, [the party seeking application of defense] doesn't have to prove that its government contractor defense is meritorious . . . [only] that its government contractor defense is colorable."); *Ruppel*, 701 F.3d at 1182 ("[W]e are concerned with who makes the ultimate determination, not what that determination will be. . . . Instead, the claimed defense need only be 'plausible.'" (citations omitted)); *Venezia*, 16 F.3d at 212 (defendant "need not show that he is entitled to prevail in order to have access to the federal forum," and "[o]nce the federal defendant has a plausible federal defense," federal jurisdiction is appropriate so that a "federal court may determine whether the defense succeeds").

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 5 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

### A. The Government Contractor Defense Under *Boyle*.

OI asserts the government contractor defense established in *Boyle v. United Tech. Corp.*, 487 U.S. 400 (1988). There, the Supreme Court considered when a federal contractor could be liable in a state law product liability suit. The Court explained that such suits implicated federal interests: "The imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected." *Boyle*, 487 U.S. at 507. Moreover, state law liability would potentially conflict with federal policy, where (for example) it purported to require the contractor to depart from the government's "selection of the appropriate design for military equipment." *Id.* at 511.

The Supreme Court in *Boyle* thus created a defense for government contractors supplying military equipment in cases where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. Asbestos cases have been heard in federal court on precisely this basis. *See, e.g.*, *Leite*, 749 F.3d at 1124 (affirming denial of motion to remand where equipment manufacturer asserted colorable government contractor defense); *Ruppel*, 701 F.3d at 1186 (reversing remand on basis of colorable government contractor defense).

### B. OI's Evidence Sets Forth At Least a Colorable Government Contractor Defense, Entitling OI to a Federal Forum.

OI can establish a colorable government contractor defense at this stage, entitling it to a federal forum, through evidence that: (1) Kaylo is properly considered military equipment; (2) the U.S. approved reasonably precise specifications for the development of Kaylo; (3) Kaylo conformed to those specifications; and (4) the Navy knew as much if not much more than OI about the potential hazards of asbestos in thermal insulation products like Kaylo. In fact, recognizing that OI can present a more-than-colorable government contractor defense, two Washington state courts recently denied plaintiffs' motions for summary judgment on OI's government contractor defense, holding that OI's evidence in support of its government

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 6 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

contractor defense presents genuine issues of fact that must be decided by a jury.[1]

1. Kaylo is Properly Considered Military Equipment for Purposes of the Government Contractor Defense.

"Military equipment" includes products that are developed on "the basis of involved judgments made by the military" or are designed for a "special military purpose." *Neilsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450 (9th Cir. 1990). Asbestos was a component of OI Kaylo because, in the 1940s and 1950s, the Navy's specifications and requirements for thermal insulation in the relevant temperature range could not be met without asbestos. Indeed, all pipe covering and block insulation products approved by the Navy in Kaylo's temperature range contained asbestos.[2] Thus, Kaylo was developed on the basis of involved judgments made by the military about naval vessels, which in turn mandated, as a practical matter, the use of asbestos.

Navy Specification 32-P-8, subsequently known as MIL-I-2781, and Navy Specification 32-I-3, subsequently known as MIL-I-2819 ("Milspecs") carefully delineated the material, dimensions, tensile strength, packaging, and various other aspects of Kaylo thermal insulation. In addition, OI's records demonstrate that it designed and developed Kaylo to meet the precise specifications and standards for thermal insulation formulated by the Navy.[3] The Navy even reserved the right to inspect Kaylo before it was shipped to ensure conformity with the Milspecs.[4] Kaylo was developed "on the basis of involved judgments made by the military, and manufactured with the special needs and specifications of the military in mind."[5] Thus, it is properly considered military equipment, *Neilsen*, 892 F.2d at 1451, especially here where Plaintiff's alleged exposures occurred while aboard a Naval ship performing military duties. *In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), does not prevent a federal forum for this case. First, procedural differences between *Hawaii* and this case warrant different treatment.

---

[1] See April 4, 2014 Order denying Plaintiffs' Mot. for Summary Judgment in *Cuvalo v. Certainteed Corp.*, No. 13-2-32705-8 in King County Sup. Ct., attached as **Ex. A**; September 5, 2014 Order denying Plaintiffs' Mot. for Summary Judgment in *Olson v. Crown Cork & Seal Co., Inc.*, No. 14-2-02860-1 in King County Sup. Ct., attached as **Ex. B**.
[2] Affidavit of Dr. Peter Neushul, ¶ 7, attached as **Ex. C**.
[3] Affidavit of Dr. Rand German, ¶¶ 7-9, attached as **Ex. D**.
[4] *See* Aug. 24, 1955 Invoice for Kaylo requiring Kaylo's compliance with applicable Milspecs and referencing a Navy inspection of product to confirm compliance (attached as **Ex. E**).
[5] Affidavit of Dr. Rand German, ¶ 9.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 7 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

1  The question of the applicability of the federal government contractor defense in *Hawaii* was not
2  raised in the context of a jurisdictional inquiry entitling the defendants to the "broad"
3  interpretation of § 1442 or an implied right to have the merits of their defense tried in a federal
4  forum. Nor were the *Hawaii* defendants permitted, as OI is here, to prevail upon showing only a
5  "colorable" entitlement to the defense.

6        Second, and more importantly, there are significant evidentiary differences between
7  *Hawaii* and the present case. The *Hawaii* court determined, on the factual record before it, that
8  the evidence presented there was not sufficient to support a government contractor defense. It did
9  not decide that question for all time or without regard to the quantum of evidence required by a
10 federal officer defendant in future cases. Significantly, the Ninth Circuit affirmed the striking of
11 the government contractor defense in that case because the defendants did not provide evidence
12 that the "insulation was . . . manufactured with the special needs of the military in mind." 960
13 F.2d at 812. Here, in contrast, OI has provided the affidavit and supporting materials relied upon
14 by Dr. German who, based on his extensive review of the records concerning the development of
15 Kaylo and various Navy specifications, has opined that Kaylo was indeed "manufactured with the
16 special needs and specifications of the military in mind."[6] OI has also provided two state court
17 orders, relying on the same evidence produced here, finding that a jury question was presented on
18 the issue of OI's government contractor defense. The evidentiary gap in *Hawaii* does not exist
19 here, and indeed, other courts have reached different results based on different factual records.
20 *See, e.g.*, *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 839 (2d Cir. 1992) (affirming
21 summary judgment for OI on design defect claim, finding OI "provid[ed] asbestos insulation
22 products in accordance with detailed government specifications" and therefore was not liable for
23 the design of its product under the government contractor defense).

24       2.    The U.S. Approved Reasonably Precise Specifications Applicable to Kaylo.
25

26       It cannot reasonably be disputed that the government approved reasonably precise design

---

[6] *Id.*

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 8 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

1  specifications for asbestos-containing insulation products such as OI Kaylo.[7] Specifically, the
2  government approved Navy Specification 32-P-8, subsequently known as MIL-I-2781, and Navy
3  Specification 32-I-3, subsequently known as MIL-I-2819. These specifications detailed the
4  material, workmanship, dimensions, tensile strength, and various other aspects of thermal
5  insulation. OI therefore satisfies this prong of the *Boyle* standard.[8]

6              3.    OI Kaylo Conformed to the Government's Precise Specifications.

7      In addition, the evidence shows OI conformed to the military specifications applicable to
8  its Kaylo product. OI's compliance with the applicable specifications is evidenced by Kaylo's
9  presence on the Navy's Qualified Products Lists ("QPLs"). Kaylo could not have been approved
10 for use by the Navy or installed aboard Navy vessels unless it complied with all applicable Navy
11 specifications.[9] Indeed, the Navy issued Certificates of Approval specifically approving OI Kaylo
12 block insulation and pipe covering.[10] OI therefore has made a colorable showing with respect to
13 this element of its government contractor defense. *Leite*, 749 F.3d at 1124 (affirming denial of
14 remand where defendant provided affidavit that product could not have been installed aboard
15 Navy ships unless it complied with Navy specifications).

16             4.    OI's Knowledge of the Potential Hazards of Asbestos in Thermal
17                   Insulation Products Was Exceeded by the Navy's Knowledge.

18     The final *Boyle* prong requiring a defendant to show that it warned the U.S. Government
19 about the dangers in the use of its product that were known to it but unknown to the government
20 is designed not to force government contractors to tell the government what it already knows, but
21 rather to require the communication of superior information about hazards. All that is required to
22 make a colorable showing with respect to this prong of the *Boyle* analysis is some evidence that
23 "the Navy at all times knew at least as much about asbestos hazards as the equipment

---

[7] *See generally* German Aff. at ¶¶ 10-11.
[8] *See* German Aff. at ¶ 10 and Exs. E and F attached thereto.
[9] Affidavit of Dr. Peter Neushul, ¶ 7.
[10] *See* Jan. 7, 1944 Letter from W.C. Latrobe to Owens-Illinois Glass Co., enclosing Certificates of Approval EN28/L5/3982 (block) and EN28/L5/4054 (pipe covering), attached as **Ex. F**; and Dec. 28, 1945 Letter from Radford to Owens-Illinois Glass Co. ("Since your approved brand of pipe-covering conforms to the requirements of the enclosed specification, it is being retained on the Acceptable List of Approved Materials."), attached as **Ex. G**.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 9 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

manufacturer[], leaving nothing for [OI] to warn the Navy about." *Leite*, 749 F.3d at 1124 (affirming denial of remand where defendant provided evidence that it did not possess superior knowledge than the Navy regarding asbestos health hazards). This is so because the contractor's duty to warn under this prong of *Boyle* "extends only to those dangers in the use of the equipment which are unknown to the government." *Sundstrom v. McDonnell Douglas Corp.*, 816 F. Supp. 587, 590 (N.D. Cal. 1993); *see also Trevino v. Gen. Dynamics Corp.*, 865 F.2d 1474, 1487 (5th Cir. 1989) ("After *Boyle*, a government contractor only has the duty to warn the government of dangers of which it has knowledge but the government does not.").

Here, OI was not required to warn the Navy of the potential hazards associated with the use of asbestos-containing insulation products because OI did not possess any knowledge about those hazards that was not already known to the Navy.[11] The evidence, as set forth in the attached affidavit of Dr. Neushul, demonstrates that the Navy was a more than sophisticated user of asbestos-containing materials throughout the relevant time periods, and knew at all relevant times: 1) that excessive exposure to asbestos dust could cause harm; 2) that exposure to asbestos dust should be kept below the then-recognized safe level; and 3) what measures it should implement to avoid excessive exposure to its workers.[12] OI's knowledge came from the published literature and the study it commissioned at Saranac Laboratory to determine, in part, whether the asbestos in Kaylo was rendered inert by the manufacturing process. That study did not add to the state of the art regarding asbestos health issues at the time, and was in any event published in the public literature, freely available to the Navy and the public.[13] Because the Navy already possessed all the knowledge regarding the potential hazards of asbestos about which OI could possibly have warned, OI has made a colorable showing that it satisfied the final prong of the *Boyle* analysis entitling it to a government contractor defense.

WHEREFORE, OI respectfully requests that this Court deny Plaintiffs' Motion to Remand, and requests an opportunity for oral argument if the Court believes it would be helpful.

---

[11] Affidavit of Dr. Peter Neushul, ¶ 19.
[12] Affidavit of Dr. Peter Neushul, ¶¶ 10-17.
[13] Affidavit of Dr. Peter Neushul, ¶ 9 and Ex. I attached thereto.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR
- 10 -
SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST. TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

Dated: October 27, 2014           SCHIFF HARDIN LLP

By: /s/ Stephen M. Copenhaver
   Stephen M. Copenhaver
   Attorneys for Defendant
   OWENS-ILLINOIS, INC.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT OWENS-ILLINOIS, INC.'S SUPP. BRIEF
IN OPP. TO PLAINTIFFS' MOTION TO REMAND
2:14-cv-01506-JLR

- 11 -

SCHIFF HARDIN LLP, ONE MARKET, SPEAR ST.
TOWER, SAN FRANCISCO, CA 94105, 415-901-8700

# **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury of the laws of the State of Washington that I served the attached DEFENDANT OWENS-ILLINOIS, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND on all counsel of record via the Court's ECF system.

Dated:    October 27, 2014                SCHIFF HARDIN LLP


                                          By: /s/ Stephen M. Copenhaver
                                              Stephen M. Copenhaver
                                              Attorneys for Defendant
                                              OWENS-ILLINOIS, INC.

SF\321236612.7